Christina N. Goodrich (SBN 261722)
christina.goodrich@klgates.com
Kevin G. Sullivan (SBN 341596)
kevin.sullivan@klgates.com
**K&L Gates LLP**
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, California  90067
Telephone: 310.552.5000
Facsimile: 310.552.5001

Christopher J. Valente
   (*pro hac vice motion forthcoming*)
christopher.valente@klgates.com
Michael R. Creta
   (*pro hac vice motion forthcoming*)
michael.creta@klgates.com
**K&L Gates LLP**
State Street Financial Center
One Lincoln Street
Boston, MA  02111
Telephone: 617.261.3100
Facsimile: 617.261.3175

*Attorneys for Plaintiff*
*ENOCHIAN BIOSCIENCES, INC.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENOCHIAN BIOSCIENCES, INC. a Delaware corporation,<br><br>                   Plaintiff,<br><br>v.<br><br>ERIC LEIRE, an individual; and DOES 1 through 10, inclusive,<br><br>                   Defendants. | Case No.: 2:22-cv-6184<br><br>**COMPLAINT FOR:**<br><br>**1.  DEFAMATION**<br><br><br><br>**DEMAND FOR JURY TRIAL** |

1

COMPLAINT

Plaintiff Enochian BioSciences, Inc. ("Enochian"), for its Complaint against defendant Dr. Eric Leire ("Leire"), alleges as follows:

## NATURE OF THE ACTION

1. This is a defamation action against Leire, the former Chief Executive Officer ("CEO") of Enochian, for making false and disparaging statements about Enochian that were published in the Wall Street Journal. As reported in the Wall Street Journal's article, Leire stated that he raised certain concerns related to a former scientific advisor of Enochian with Enochian's then Board of Directors (the "Enochian Board"), and that he was subsequently terminated by Enochian after raising such concerns.

2. These statements are false. Leire never raised the alleged concerns with the Enochian Board and he was not terminated for raising any such concerns. Rather, Leire's termination was a business decision dictated by Enochian's business needs at the time.

3. Leire's false statements are disparaging and have caused Enochian to suffer harm. Through this action, Enochian seeks monetary damages and equitable relief to redress Leire's wrongful conduct.

## THE PARTIES

4. Enochian is a Delaware corporation with its principal place of business in Los Angeles, California. Enochian is a pre-clinical biotechnology company dedicated to identifying, researching, developing, and commercializing gene-modified cell and immune therapies.

5. Leire is an individual who, upon information and belief, resides in Belgium.

6. Enochian is unaware of the true names and capacities of the remaining defendants, sued as Does 1 through 10, and therefore sues defendants by such fictitious names. Enochian reserves its right to amend this Complaint to allege true names and capacities when ascertained. Enochian is informed and believes, and on that basis

alleges, that each of the fictitiously named defendants are in some manner responsible for the harm Enochian has incurred and will incur if injunctive relief is not allowed or damages are not awarded.

## JURISDICTION AND VENUE

7.  Pursuant to 28 U.S.C. § 1332(a), this Court has subject matter jurisdiction because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Enochian is a citizen of Delaware (where it is incorporated) and California (where it maintains its principal place of business).  Leire is a citizen of Belgium (where he currently resides).

8.  This Court has personal jurisdiction over Leire because he directed the tortious acts complained of herein at Enochian in this District and committed tortious acts that he knew would cause injury to Enochian in this District.

9.  Pursuant to 28 U.S.C. § 1391(b)(2), this Court is a proper venue because a substantial part of the events or omissions giving rise to the claims occurred in this District by reason of Leire's conduct as alleged herein.

## FACTUAL ALLEGATIONS

**A.   Leire Serves as Enochian's CEO.**

10.  Upon information and belief, Leire earned his MD from *Université Joseph Fourier* in Grenoble, France in 1980.  Since that time, and upon information and belief, Leire has become a leading expert in the biotechnology and pharmaceutical industries, with experience at leading pharmaceutical companies, several private and public biotechnology companies, in academia, and as an investor.  Upon information and belief, Leire is the named inventor of several patents.  Upon information and belief, Leire also holds an MBA from HEC Paris (Paris, France) and Kellogg School of Management at Northwestern University (Chicago, Illinois).

11.  Leire began serving as Enochian's CEO in March 2018 and remained in that role until his termination in January 2019.  Prior to serving as Enochian's CEO, Leire was the CEO of Enochian's predecessor.

12. During his tenure at Enochian, Leire was involved in Enochian's efforts to develop and commercialize various technologies, therapies, and platforms. As the head of the company, Leire was a strong advocate and supporter of such efforts.

13. Leire had regular access to and meetings with the Enochian Board. At its meetings, Leire regularly provided the Enochian Board with information and updates concerning, among other things, Enochian's research and development operations, product pipelines, studies and experiments, and upcoming milestones. This information was often conveyed through detailed presentations. To the extent the Enochian Board had questions regarding the presentations, Leire would generally be available to answer them.

14. By way of example, on June 29, 2018, Leire provided the Enochian Board with a detailed strategic update review of Enochian's HIV and oncology product pipelines.

15. Similarly, on October 29 and 30, 2018—less than three months before his separation from Enochian—Leire provided a presentation to the Enochian Board covering, among other things, Enochian's portfolio management, updates for the HIV/AIDS and oncology product pipelines, and details concerning manufacturing partners, status, timing, and next milestones.

16. Leire also worked with Serhat Daniel Gumrukcu ("Gumrukcu"), a former scientific advisor to Enochian, and supported the ideas Gumrukcu was developing. Indeed, during his time at Enochian, Leire praised and promoted Gumrukcu's ideas and development efforts.

17. For example, on December 20, 2018, just several weeks before Leire's separation from Enochian, Enochian participated in the Nasdaq bell ringing ceremony. In connection with that ceremony, Leire was interviewed by Nasdaq, where he described Enochian's ongoing research and development efforts, including certain pre-clinical experiments. Among other things, Leire stated that he believed such research and development efforts could lead to the end of HIV/AIDS.

18. During the December 20, 2018 Nasdaq interview, Leire also stated that Enochian was based in Los Angeles, worked with multiple partners in Los Angeles, had a manufacturer in the "Bay Area," and was a "mostly California company."

19. On other occasions while he was employed by Enochian, Leire described Gumrukcu's work as "groundbreaking science."

20. On January 7, 2019, Enochian terminated Leire's employment. At the time of Leire's termination, Enochian was growing and had recently become a Nasdaq publicly listed company. Enochian determined that Leire was not the best person to lead the company in this new stage of growth and expansion.

**B.      Leire Makes False and Defamatory Statements About Enochian.**

21. Despite Leire's praise of Gumrukcu's ideas while working with Enochian, after the company terminated him, Leire attempted to revise this history and suggested that he was terminated for raising certain concerns about Gumrukcu with the Enochian Board. This is, of course, false.

22. On June 27, 2022, the Wall Street Journal published an article titled "Biotech Wizard Left a Trail of Fraud — Prosecutors Allege It Ended in Murder" (the "WSJ Article").

23. Upon information and belief, Leire participated in one or more interviews with the Wall Street Journal in connection with its preparation of the WSJ Article. Additionally, Leire exchanged e-mails, and potentially other communications, with at least one of the authors of the WSJ Article regarding the article's contents prior to its publication.

24. In the WSJ Article, and based on the information he provided through interviews and other communications with the Wall Street Journal, Leire is quoted as saying that (1) Gumrukcu was a "liar" and "taking liberty with science" and (2) he suspected Gumrukcu "had fabricated his résumé and held neither a medical degree nor a doctoral degree."

25. According to the WSJ Article, Leire stated that he was terminated by Enochian in 2019 "after raising his concerns with the Enochian board."

26. These statements are false and defamatory. While Leire was at Enochian, Leire never informed the Enochian Board that Gumrukcu was a "liar" or "taking liberty with science." To the contrary, and as demonstrated by his comments at the Nasdaq bell ringing ceremony, Leire supported Gumrukcu's ideas, theories, and development efforts while he was working at Enochian.

27. Further, and as discussed above, while at Enochian, Leire routinely participated in Enochian Board meetings and provided detailed scientific presentations. Leire had ample opportunity to inform the Enochian Board that Gumrukcu was a "liar" and "taking liberty with science," yet never did so.

28. While working at Enochian, Leire also never told the Enochian Board that he suspected Gumrukcu "had fabricated his résumé and held neither a medical degree nor a doctoral degree." Rather, Leire promoted and supported Gumrukcu's research and development work.

29. To be clear, Leire's termination was a business decision that had nothing to do with any alleged "concerns" related to Gumrukcu or the science underlying Enochian's product pipelines.

30. Because, during his employment with Enochian, Leire never alerted the Enochian Board to any issues regarding Gumrukcu being a "liar" or "taking liberty with science," or Gumrukcu's medical qualifications, it is impossible for such purported concerns to have been the basis for Leire's termination.

31. The WSJ Article has been distributed to millions of people around the world, including many in Enochian's home state of California. The widespread distribution of Leire's false statements have tarnished Enochian's reputation and caused Enochian to suffer substantial harm.

32. Enochian asked Leire to contact the Wall Street Journal to retract or correct the false statements made herein. Despite Enochian's request, Leire has taken no steps to have the false statements retracted or corrected.

## FIRST CLAIM

### (Defamation)

33. Enochian incorporates by reference and re-alleges the allegations in Paragraphs 1-32 as if fully set forth herein.

34. Leire made the above-referenced statements to the Wall Street Journal, which were then subsequently published in the WSJ Article. These statements were false and Leire knew they were false when he made them.

35. On information and belief, many readers of the Wall Street Journal read Leire's false statements in the WSJ Article and believed them to be true.

36. On information and belief, such readers reasonably understood the statements were about Enochian.

37. On information and belief, readers of the WSJ Article reasonably understood Leire's statements to mean that Leire informed the Enochian Board that (1) Gumrukcu was a "liar" and "taking liberty with science" and (2) he suspected Gumrukcu "had fabricated his résumé and held neither a medical degree nor a doctoral degree." This is not true. Leire never communicated this information to the Enochian Board.

38. On information and belief, readers of the WSJ Article reasonably understood Leire's statements to mean that Enochian terminated him for raising the above-described purported "concerns." Again, this is not true. Leire's termination was a business decision unrelated to any alleged concerns related to Gumrukcu.

39. Leire's false statements are not protected by any applicable privilege.

40. At the time he made the false statements, Leire knew and intended that his statements would be published to a national and international audience, including residents of California.

41. At the time he made the false statements, Leire knew that Enochian's principal place of business was in California and that Enochian conducted a significant amount of its business in California.

42. As a direct and proximate result of Leire's defamatory statements, Enochian has suffered damages in excess of $75,000. At a minimum, Leire's misconduct has harmed Enochian's reputation in the community and caused Enochian to suffer significant economic losses in an amount to be determined at trial.

43. On information and belief, Leire's actions described herein were done with the deliberate intent to injure Enochian's business, thus entitling Enochian to punitive damages in an amount sufficient to deter similar conduct in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Enochian respectfully requests that this Court:

1. Award Enochian actual, compensatory, and consequential damages, according to proof;

2. Enjoin Leire from further republishing, repeating, distributing, or otherwise disseminating the defamatory statements set forth herein;

3. Order Leire to retract or correct the defamatory statements set forth herein;

4. Enjoin Leire from making further defamatory statements concerning Enochian and its business;

5. Award Enochian exemplary and punitive damages in a sum sufficient to deter Leire from engaging in further unlawful conduct;

6. Award Enochian its attorneys' fees and costs of suit incurred herein;

7. Award Enochian pre- and post-judgment interest in accordance with law; and

8. Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

                                            **K&L Gates LLP**

Date: August 31, 2022          By: /s/ Christina N. Goodrich
                                                      Christina N. Goodrich
                                                      Kevin G. Sullivan

                                                      Attorneys for Plaintiff,
                                                      ENOCHIAN BIOSCIENCES, INC.

## DEMAND FOR JURY TRIAL

Plaintiff Enochian Biosciences, Inc. hereby demands a jury trial for all issues triable by a jury.

Respectfully submitted,

                                  **K&L Gates LLP**

Date: August 31, 2022        By: /s/ Christina N. Goodrich
                                          Christina N. Goodrich
                                          Kevin G. Sulivan

                                          Attorneys for Plaintiff,
                                          ENOCHIAN BIOSCIENCES, INC.